DA 10-0097

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 231

LARRY DIMARZIO,

      Plaintiff and Appellant,

  v.

CRAZY MOUNTAIN CONSTRUCTION, INC.,
a Montana corporation, F. L. DYE COMPANY,
a Montana close corporation, BRIDGER GLASS
& WINDOWS, INC., a Montana corporation,

      Defendants, Appellees and Cross-Appellants.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 04-596
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      John M. Kauffman, Kasting, Kauffman & Mersen, Bozeman, Montana

      For Appellees:

      William A. D'Alton, D'Alton Law Firm, Billings, Montana
      (Crazy Mountain Construction, Inc.)

      Edward J. Guza, Guza, Williams & Nesbitt, Bozeman, Montana
      (F.L. Dye Company)

Submitted on Briefs:  September 15, 2010
Decided:  November 4, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Plaintiff Larry DiMarzio (DiMarzio) appeals from a jury verdict from the Eighteenth Judicial District, Gallatin County, finding he breached his contract with both Defendants Crazy Mountain Construction, Inc. ("CMC") and F.L. Dye Company. The jury also found CMC was negligent in its work for DiMarzio and awarded damages to DiMarzio. DiMarzio also appeals certain evidentiary rulings. CMC cross-appeals the denial of most of its attorney's fees. F.L. Dye cross-appeals the denial of prejudgment interest. We affirm.

## BACKGROUND

¶2     DiMarzio wanted to add a new kitchen and a glass atrium to his home in Bozeman, Montana, and hired CMC as a general contractor for the project on May 14, 2003. F.L. Dye was hired to install the air conditioning and humidification systems at DiMarzio's home. During the course of the project, disputes arose between DiMarzio, CMC, and F.L. Dye about the quality of the work and air conditioning and humidification systems. These disputes resulted in the termination of the business relationships between CMC, F.L. Dye, and DiMarzio in the spring of 2004.

¶3     In October 2004, DiMarzio filed suit against CMC and F.L. Dye.[1] In his Amended Complaint, DiMarzio alleged CMC was negligent and breached its contract with him by failing to perform its work in a workmanlike manner and by its failure to properly supervise subcontractors, including F.L. Dye. DiMarzio alleged F.L. Dye was negligent in the design and installation of the air conditioning and humidification systems. CMC filed a counter-

---

[1] DiMarzio also sued Bridger Glass & Windows, Inc. and S.L. Pynn Plumbing & Heating. They

claim against DiMarzio for breach of contract. F.L. Dye filed a counter-claim against DiMarzio for breach of contract and unjust enrichment.

¶4    Pursuant to the District Court's scheduling order, DiMarzio timely filed the expert disclosure of Kevin Amende. In June 2007, nearly six months after the District Court's expert disclosure deadline, DiMarzio filed what he titled a "Supplemental Expert Disclosure" of William Lynch. F.L. Dye moved to strike the supplement as untimely (after the disclosure deadline) and because it was filed without leave of court (the disclosure was not made pursuant to a motion). DiMarzio responded that new information had been discovered and he was required to supplement, and that since there was no trial date, final pretrial order, or mediation, F.L. Dye was not surprised or prejudiced. DiMarzio also moved the District Court to amend the scheduling order to permit him to use Lynch at trial.

¶5    In a November 21, 2007, order, the District Court denied DiMarzio's request to amend the scheduling order, reserved judgment on the motion to strike, and offered to consider whether Lynch could testify to new matters as a rebuttal witness.

¶6    In response to the District Court's invitation, DiMarzio moved to substitute Lynch for Amende because Amende developed a conflict with DiMarzio and refused to testify at trial. On February 15, 2008, the District Court issued an order refusing to substitute Lynch for Amende and precluding DiMarzio from calling Lynch during his case in chief, but allowing DiMarzio to call Lynch as a rebuttal witness.

---

are not part of this appeal.

¶7 On May 13, 2009, DiMarzio again moved the District Court for an order allowing him to call Lynch during his case in chief. The District Court was not persuaded to alter its prior ruling and DiMarzio's motion was again denied by order dated June 26, 2009.

¶8 The case was tried before a jury from August 25, 2009, through September 1, 2009. The jury found as follows:

> On DiMarzio's claims: CMC did not breach the contract, but CMC was negligent and awarded DiMarzio $7,902.44. F.L. Dye was not negligent;

> On CMC's counter-claims: DiMarzio breached the contract and awarded CMC $5,361.78;

> On F.L. Dye's counter-claims: DiMarzio breached the contract and awarded F.L. Dye $10,740.00, but DiMarzio was not unjustly enriched.

¶9 After the verdict, CMC requested attorney's fees and F.L. Dye requested prejudgment interest. The District Court awarded CMC attorney's fees for time spent on the contract claim only. CMC appeals from this order. The District Court denied F.L. Dye's request for prejudgment interest, concluding F.L. Dye's right to damages did not vest until the jury returned its verdict as to whether a contract existed between F.L. Dye and DiMarzio. F.L. Dye appeals from this order.

¶10 We restate the issues as follows:

¶11 DiMarzio raises the following issues on appeal:

¶12 Issue 1: Did the District Court abuse its discretion when it refused to allow DiMarzio to call William Lynch as an expert during his case in chief?

4

¶13 Issue 2: Did the District Court err when it denied DiMarzio's motion for directed verdict and allowed the jury to consider whether a contract existed between DiMarzio and F.L. Dye?

¶14 Issue 3: Did the District Court err in instructing the jury?

¶15 CMC raises the following issue on cross-appeal:

¶16 Issue 4: Did the District Court err in denying most of CMC's attorney's fees?

¶17 F.L. Dye raises the following issue on cross-appeal:

¶18 Issue 5: Did the District Court err when it denied F.L. Dye's request for prejudgment interest?

**STANDARDS OF REVIEW**

¶19 The district court's ruling on the admissibility of expert testimony is reviewed for an abuse of discretion. *Sunburst School Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 68, 338 Mont. 259, 165 P.3d 1079 (*citing State v. Vernes*, 2006 MT 32, ¶ 14, 331 Mont. 129, 130 P.3d 169).

¶20 The denial of a motion for directed verdict is reviewed de novo. *Tacke v. Energy West, Inc.*, 2010 MT 39, ¶ 16, 355 Mont. 243, 227 P.3d 601; *Tucker v. Farmers Ins. Exch.*, 2009 MT 247, ¶ 23, 351 Mont. 448, 215 P.3d 1.

¶21 The giving of jury instructions is reviewed for an abuse of discretion. *Vincent v. BNSF Ry. Co.*, 2010 MT 57, ¶ 14, 355 Mont. 348, 228 P.3d 1123; *Edie v. Gray*, 2005 MT 224, ¶ 12, 328 Mont. 354, 121 P.3d 516.

¶22 The award of attorney's fees is reviewed for an abuse of discretion. *Tacke*, ¶ 17.

5

¶23 The decision to grant or deny prejudgment interest is reviewed to determine whether the district court correctly interpreted the law. *Swank Enterprises, Inc. v. All Purpose Services, Ltd.*, 2007 MT 57, ¶ 14, 336 Mont. 197, 154 P.3d 52.

**DISCUSSION**

¶24 *Issue 1: Did the District Court abuse its discretion when it refused to allow DiMarzio to call William Lynch as an expert during his case in chief?*

¶25 The District Court set a deadline of December 31, 2006, for the parties to disclose expert witnesses. DiMarzio timely disclosed expert witness, Kevin Amende. On June 20, 2007, DiMarzio filed a "Supplemental Expert Disclosure" which, in reality, disclosed an entirely new expert, William Lynch. Amende developed a conflict with DiMarzio and would not testify at trial; therefore, DiMarzio sought to replace Amende with Lynch. Because of the untimely disclosure of the new expert Lynch, the District Court did not allow DiMarzio to call Lynch in his case in chief, but allowed Lynch to testify in rebuttal.

¶26 DiMarzio alleges the District Court erred in refusing to allow Lynch to testify as an expert in his case in chief because there was no prejudice to F.L. Dye, and DiMarzio was not allowed to present the complete story to the jury.

¶27 The trial court is vested with *great* latitude in ruling on the admissibility of expert testimony. *Nelson v. Nelson*, 2005 MT 263, ¶ 31, 329 Mont. 85, 122 P.3d 1196 (emphasis in original). The district court has the authority to exclude expert testimony when the expert witness was not properly disclosed. *Id*. at ¶ 32; *First Citizens Bank v. Sullivan*, 2008 MT 428, ¶ 29, 347 Mont. 452, 200 P.3d 39. This Court views "with favor" sanctions for failure

6

to comply with the rules of discovery. *Seal v. Woodrows Pharmacy*, 1999 MT 247, ¶ 22, 296 Mont. 197, 988 P.2d 1230.

¶28 Absent a showing that the district court abused its discretion, this Court will not overturn a district court's decision on the admissibility of evidence, including expert testimony. *Nelson*, ¶ 31; *Sunburst*, ¶ 68. A district court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *Circle S Seeds of Montana, Inc. v. T & M Transporting, Inc.*, 2006 MT 25, ¶ 14, 331 Mont. 76, 130 P.3d 150.

¶29 The District Court did not err when it refused to allow Lynch to testify in DiMarzio's case in chief. DiMarzio's disclosure of Lynch as an expert witness was not proper as it did not comply with the District Court's scheduling order. The District Court did not act arbitrarily nor did it exceed the bounds of reason. It considered the issue thoroughly and on several occasions – in November 2007, February 2008, and June 2009. The District Court acted within its wide discretion in precluding Lynch's testimony during DiMarzio's case in chief but allowing it during rebuttal. *Nelson*, ¶¶ 32-34; *First Citizens Bank*, ¶¶ 29-32.

¶30 *Issue 2: Did the District Court err when it denied DiMarzio's motion for directed verdict and allowed the jury to consider whether a contract existed between DiMarzio and F.L. Dye?*

¶31 The jury found that DiMarzio had a contract with F.L. Dye regarding the air conditioning and humidification systems, and that DiMarzio breached that contract. DiMarzio maintains it was CMC who was responsible for hiring all subcontractors, such as

7

F.L. Dye, and any contract was between CMC and F.L. Dye. He alleges that all billing went through CMC and that he paid CMC for F.L. Dye's work.

¶32 F.L. Dye contends that the contract was with DiMarzio. At trial, F.L. Dye's representative, Schaeffer, testified that the contract was with CMC. CMC's representative, Keyes, testified that CMC hired F. L. Dye. However, F.L. Dye also introduced evidence that it presented DiMarzio with an offer to install the air conditioning and humidification systems and that DiMarzio accepted by signing two proposals. Additionally, there was evidence that DiMarzio contacted F. L. Dye personally to discuss F. L. Dye's ongoing work on the project.

¶33 DiMarzio moved for a directed verdict on the issue of whether a contract existed between him and F.L. Dye. The motion was based upon the testimony of Schaeffer and Keyes that the contract was between CMC and F. L. Dye. The District Court denied DiMarzio's motion.

¶34 Motions for directed verdict are properly granted when there is a complete absence of any evidence to warrant submission to a jury, such evidence and all inferences being considered in the light most favorable to the party opposing the motion. *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 27, 302 Mont. 55, 11 P.3d 544.

¶35 The District Court did not err in denying DiMarzio's motion for directed verdict. Drawing all inferences in favor of F.L. Dye, the party opposing DiMarzio's motion, it was proper to submit the contract issue to the jury. While Schaeffer testified the contract was between CMC and F. L. Dye, other evidence presented supported F. L. Dye's theory that the contract was between it and DiMarzio, which is precisely what the jury found. Because of

8

the conflicting evidence presented at trial, it cannot be said that there was a complete absence of any evidence to warrant submitting the contract issue to the jury. The District Court properly denied DiMarzio's motion for directed verdict.

¶36 *Issue 3: Did the District Court err in instructing the jury?*

¶37 The giving of jury instructions is reviewed for an abuse of discretion. *Vincent*, ¶ 14; *Edie*, ¶ 12. A district court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason" resulting in substantial injustice. *Clark v. Bell*, 2009 MT 390, ¶ 16, 353 Mont. 331, 220 P.3d 650. District courts are given "great leeway" in instructing the jury. *Vincent*, ¶ 14 (*citing Payne v. Knutson*, 2004 MT 271, ¶ 14, 323 Mont. 165, 99 P.3d 200). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety and in connection with the other instructions given and the evidence presented at trial. *Vincent*, ¶ 14; *Kiely Constr., LLC v. City of Red Lodge*, 2002 MT 241, ¶ 62, 312 Mont. 52, 57 P.3d 836. "The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Kiely*, ¶ 62.

¶38 The jury was given three instructions to which DiMarzio objects: Instruction numbers 22, 23, and 24. Instruction 22 states:

> An agreement may be established by the conduct of the parties without any words being expressed in writing or orally, if, from such conduct, it appears that the parties mutually intended to agree on all the terms. The same elements are essential to an implied contract as are essential to an express contract.

9

¶39 DiMarzio objected to this instruction, arguing it was unsupported by the evidence and inconsistent with F.L. Dye's unjust enrichment claim.

¶40 DiMarzio's argument regarding Instruction 22 is essentially the same as his argument regarding the denial of his motion for directed verdict. Because the evidence presented at trial was conflicting on the issue of whether there was a contract between DiMarzio and F.L. Dye, giving Instruction 22 was not an abuse of discretion.

¶41 Instruction 23 states:

Performance by a contractor of a construction contract in accordance with the provisions of a contract entitles a contractor to payment from the owner.

¶42 DiMarzio objected, and argues that this instruction "unfairly prejudiced" him by giving the jury "the incorrect impression that contractors have some higher status than owners" in breach of contract cases.

¶43 The District Court did not err in giving Instruction 23. It was for the jury to decide whether the contractor had performed or not, and was entitled to payment or not. The instructions, read as a whole, adequately state the law applicable to this case. Instruction 23 favored neither party, and DiMarzio has shown no prejudice.

¶44 Instruction 24 states:

A subcontractor is a person who is hired to produce a specific result but who is not subject to the right of control of the general contractor as to the way he brings about that result. Generally, a person who hires an independent contractor is not liable for his actions.

¶45 DiMarzio objected that Instruction 24 was contrary to CMC's testimony, misleading, and an improper comment on the evidence.

10

¶46 The District Court did not err in giving Instruction 24. Conflicting evidence was presented at trial about who hired F.L. Dye. It cannot be said, on the record before the Court, that giving this instruction was an abuse of discretion.

¶47 *Issue 4: Did the District Court err in denying most of CMC's attorney's fees?*

¶48 After the jury returned its verdict, CMC moved for attorney's fees claiming it was the prevailing party. The contract between CMC and DiMarzio provided "[i]n the event any dispute arises between the parties to this agreement, the prevailing party shall be entitled to their costs and attorney's fees." The District Court determined that CMC was the prevailing party and was entitled to attorney's fees, but only on the contract claim. A hearing was held December 17, 2009, to determine the amount and reasonableness of attorney's fees related to the contract claim.

¶49 CMC and DiMarzio agreed that it was impossible to segregate the attorney's fees between the contract and negligence claims. CMC argued that because it was impossible to separate fees related to the contract claim from the negligence claim, and because CMC was the prevailing party, it was therefore entitled to all its attorney's fees.

¶50 However, the District Court found that because CMC's insurer defended the action and was only obligated to defend the negligence claim, a majority of the attorney's fees were for the negligence claim. Additionally, the District Court denied a majority of CMC's attorney's fees on equitable grounds, stating that if CMC or its insurer recovered the attorney's fees, they would receive a windfall.

11

¶51 CMC renews its argument on appeal, urging that because the attorney's fees could not be segregated between the negligence and contract claims, and because it was the prevailing party, it should have been awarded all its attorney's fees.

¶52 The award of attorney's fees is reviewed for an abuse of discretion. *Tacke*, ¶ 17.

¶53 The District Court did not abuse its discretion when determining the amount of attorney's fees to award CMC. While CMC is correct that the district court is bound by the contract between CMC and DiMarzio which entitles the prevailing party to attorney's fees, *Doig v. Cascaddan*, 282 Mont. 105, 112, 935 P.2d 268, 272 (1997), that does not mean CMC is entitled to *all* attorney's fees. The reasonable amount of attorney's fees awarded is left to the discretion of the district court. *See Plath v. Schonrock*, 2003 MT 21, ¶ 40, 314 Mont. 101, 64 P.3d 984. What constitutes reasonable attorney's fees is for the district court to determine under the facts of each case. *Id*. at ¶ 36. An award of attorney's fees must be based on competent evidence. *Id*. at ¶ 39. "In a lawsuit involving multiple claims or multiple theories, an award of attorney's fees must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable." *Emmerson v. Walker*, 2010 MT 167, ¶ 32, 357 Mont. 166, 236 P.3d 598.

¶54 The District Court found CMC was entitled to attorney's fees, as required by the contract. Then, it thoroughly considered the amount of attorney's fees to award. It held a hearing and considered testimony and evidence submitted by the parties. It considered the seven *Plath* factors and noted that *Plath* allows the court to consider other factors. It found that based upon the unique circumstances of this case (CMC's insurer paid most of the

attorney's fees), it was reasonable to award only a portion of the attorney's fees CMC sought. The district court has such discretion - what constitutes reasonable attorney's fees is for the district court to determine under the facts of each case. *Plath*, ¶ 36. The District Court determined that only a portion of the fees sought were reasonable. Considering all the evidence of record, the District Court acted within its discretion in awarding partial attorney's fees to CMC based upon the particular circumstances of the case before it.

¶55 *Issue 5: Did the District Court err when it denied F.L. Dye's request for prejudgment interest?*

¶56 F.L. Dye sought prejudgment interest on the jury's award of $10,740.00, the exact amount of two unpaid invoices it previously submitted to DiMarzio. The District Court denied F.L. Dye prejudgment interest, finding that F.L. Dye's right to recover did not vest until the day the jury returned its verdict. F.L. Dye appeals, arguing that its right to recover vested on the date of the last unpaid invoice.

¶57 The decision to grant or deny prejudgment interest is reviewed to determine whether the district court correctly interpreted the law. *Swank*, ¶ 14.

¶58 A party is entitled to prejudgment interest when three criteria are met: (1) the existence of an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain by calculation; and (3) the right to recover the obligation vests on a particular day. Section 27-1-211, MCA; *James Talcott Constr., Inc. v. P & D Land Enterprises*, 2006 MT 188, ¶ 40, 333 Mont. 107, 141 P.3d 1200; *Montana Petroleum Tank*

13

*Release Compensation Board v. Crumleys, Inc.*, 2008 MT 2, ¶ 99, 341 Mont. 33, 174 P.3d 948.

¶59　A party is not entitled to prejudgment interest when the amount of that party's damages is uncertain or disputed. *Mont. Petroleum*, ¶ 99. We have consistently refused to award prejudgment interest when the amount of damages due upon breach of contract was not clearly ascertainable until determined by the trial court. *Id*. at ¶ 100.

¶60　The District Court did not err when it refused to award prejudgment interest. At issue was first, whether a contract even existed between F. L. Dye and DiMarzio; second, if so, whether DiMarzio breached the contract; and third, if there was a breach, whether F. L. Dye was damaged and in what amount. Contrary to F.L. Dye's assertion, this was not an action for the definite unpaid balance of a contract. Until the jury returned its verdict, neither party knew if a contract even existed, let alone a certain sum of damages. *See Carriger v. Ballenger*, 192 Mont. 479, 486, 628 P.2d 1106, 1110 (1981). The District Court correctly found F.L. Dye was not entitled to prejudgment interest.

**CONCLUSION**

¶61　We affirm the District Court.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS